# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:20-cv-00798-ADA-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT TURNER'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF No. 77) |

Plaintiff Preston Taylor is proceeding in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Turner's motion for summary judgment, filed September 22, 2022.

## I.

## RELEVANT BACKGROUND

This case is proceeding against Defendant Turner for excessive force in violation of the Eighth Amendment.[1]

On December 14, 2020, Defendant Turner filed an answer to the complaint. (ECF No. 21.)

---

[1] On August 31, 2022, the Court issued Findings and Recommendations recommending that Defendant Burden's exhaustion motion for summary judgment be granted. (ECF No. 74.)

1

On February 19, 2021, the Court issued the discovery and scheduling order. (ECF No. 31.)

On March 25, 2022, Plaintiff filed a second amended complaint. (ECF No. 64.) An answer to the second amended complaint was filed on April 14, 2022. (ECF No. 67.)

On April 18, 2022, the Court an order extending the discovery deadline to June 17, 2022, and the dispositive motion deadline to September 16, 2022. (ECF No. 68.)

As previously stated, on September 22, 2022, Defendant Turner filed the instant motion for summary judgment. (ECF No. 77.) Plaintiff filed an opposition on October 6, 2022, and Defendant filed a reply on October 17, 2022. (ECF Nos. 80, 81.)

## II.

## LEGAL STANDARD

### A. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine

issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint

On October 13, 2019, Plaintiff was released from assigned cell C2-210 to participate in the Evening Dayroom Recreation Program.  As Plaintiff headed downstairs, an altercation between two inmates ensued approximately thirty feet away from him. Defendant Turner yelled, "Get down!"  As soon as Plaintiff made it down the stairs, he complied with Defendant Turner's command.  Then, Defendant Turner began aimlessly firing a 40 MM Block gun.  Moments later, Plaintiff was shot in the back of his head.  Neither of the two inmates involved in the altercation were struck by Defendant Turner's gunfire.  After being shot, the back of Plaintiff's head instantly became swollen.  Plaintiff suffered extreme pain and dizziness.

On information and belief, Defendant Turner has a history of recklessly dislodging firearms.  As a direct and proximate result of the above acts and omissions, Plaintiff has suffered and continues to suffer severe physical injuries, including but not limited to, head pain and migraines, as well as emotional distress, anxiety, depression, insomnia and mental anguish.

///
///
///
///

3

**B.     Statement of Undisputed Facts[2]**

1. Plaintiff is an inmate housed at the California Substance Abuse Treatment Facility (SATF).  (Second Am. Compl., ECF No. 64.)

2. Plaintiff filed his second amended complaint (SAC), the operative complaint, on March 25, 2022, while incarcerated within the custody of the California Department of Corrections and Rehabilitation (CDCR).  (SAC, ECF No. 64.)

3. Plaintiff alleges in the operative complaint that officer Turner violated Plaintiff's Fourth Amendment[3] right to be free from excessive force by "aimlessly firing his Block gun" on October 13, 2019, causing Plaintiff to be hit in the head.  (SAC, ECF No. 64 at ¶ 22.)

4. On October 13, 2019, Defendant P. Turner was assigned as a control booth officer in Building C-2 at SATF, where Plaintiff was incarcerated.  (Declaration of P. Turner (Turner Decl.) ¶¶ 2-3.)

5. Prior to the October 13, 2019 incident, Plaintiff and Defendant Turner did not have any problematic issues.  (Declaration of Daniel Duan (Duan Decl.), Ex. B, Pl. Dep. at 24:2-4; 16-21.)

6. On October 13, 2019, while Defendant Turner was letting inmates out of their cells in Section A for dayroom time, two inmates, Earle and Moore, started to fight on the first floor of the section.  (Turner Decl. ¶ 3; Pl. Dep. at 26:18-19.)

7. Defendant Turner saw the two inmates strike each other with closed fists in the face and head area, and realized it could result in serious bodily injury.  (Turner Decl. ¶¶ 3, 9; Pl. Dep. at 29:10-12.)

8. Defendant Turner alerted the emergency over the radio, ordered the inmates to get down via the public address system, and positioned himself at the far-right windows of the

---

[2] Hereinafter referred to as "UF."

[3] The plaintiff's custodial status determines the applicable constitutional right.  The Fourth Amendment governs claims of excessive force during a seizure of a free citizen. Graham v. Connor, 490 U.S. 386, 394 (1989).  After conviction, the Cruel and Unusual Punishment Clause of the Eighth Amendment governs the use of force against a prisoner. Id. at 393-95, n.10.  Since Plaintiff was a convicted prisoner at the time of the incident, it is the Eighth Amendment, rather than Fourth Amendment, that is implicated in excessive force claims by convicted prisoner, and he cannot and does not proceed on a Fourth Amendment claim in this action.

4

1  control tower, in line with the right side stairs in Section A.  (Turner Decl. ¶ 2; Pl. Dep. at 28:13-14.)

2. 9. All the inmates in the dayroom, except Moore and Earle, got down.  This included Plaintiff Taylor, who sat down on the left-side stairs.  (Turner Decl. ¶ 3.)

10. Defendant Turner used his 40 mm foam baton launcher and aimed at Earle's thigh, about 30 feet away.  (Turner Decl. ¶ 3.)

11. Due to Earle's unpredictable movements, Defendant Turner did not see if he struck Earle or where the foam baton round landed.  (Turner Decl. ¶ 3.)

12. Defendant Turner could not see if the second foam baton struck or where it landed.  (Turner Decl. ¶ 4.)

13. Defendant Turner gave another order for the inmates to get down, but Kirkland continued advancing.  (Turner Decl. ¶ 5.)

14. After the fourth shot, Moore and Kirkland got on the ground in a prone position. (Turner Decl. ¶ 5.)

**C.    Analysis of Defendant's Motion**

1.    <u>Merits of Plaintiff's Claim</u>

Defendant argues there are no genuine issues of material fact that Defendant did not act with excessive force in violation of the Eighth Amendment and he is entitled to qualified immunity.

In opposition, Defendant argues genuine issues of material fact exist as to whether Defendant Turner used excessive force in violation of the Eighth Amendment and there is no showing that he is entitled to qualified immunity.

The parties do not dispute that Plaintiff was struck with a 40 MM Block gun used by Defendant Turner during a disturbance on October 13, 2019, in which Plaintiff was not involved. It is undisputed that on October 13, 2019, Defendant P. Turner was assigned as a control booth officer in Building C-2 at SATF, where Plaintiff was incarcerated.  (UF 4.)  Prior to the October 13, 2019 incident, Plaintiff and Defendant Turner did not have any problematic issues.  (UF 5.) On October 13, 2019, while Defendant Turner was letting inmates out of their cells in Section A

1  for dayroom time, two inmates, Earle and Moore, started to fight on the first floor of the section.
2  (UF 6.)  Defendant Turner saw the two inmates strike each other with closed fists in the face and
3  head area, and realized it could result in serious bodily injury.  (UF 7.)  Defendant Turner alerted
4  the emergency over the radio, ordered the inmates to get down via the public address system, and
5  positioned himself at the far-right windows of the control tower, in line with the right side stairs
6  in Section A.  (UF 8.)  All the inmates in the dayroom, except Moore and Earle, got down.  This
7  included Plaintiff Taylor, who sat down on the left-side stairs.  (UF 9.)  Defendant Turner used
8  his 40 mm foam baton launcher and aimed at Earle's thigh, about 30 feet away.  (UF 10.)  Due to
9  Earle's unpredictable movements, Defendant Turner did not see if he struck Earle or where the
10 foam baton round landed.  (UF 11.)  Defendant Turner could not see if the second foam baton
11 struck or where it landed.  (UF 12.)  Defendant Turner gave another order for the inmates to get
12 down, but Kirkland continued advancing.  (UF 13.)  After the fourth shot, Moore and Kirkland
13 got on the ground in a prone position.  (UF 14.)

14       The parties version of the October 13, 2019 incident differ and the factual disputes are
15 outcome-determinative.  Defendant contends that the use of force was necessary to end the fight
16 between inmates Earle, Moore and Kirkland.  (Turner Decl. ¶¶ 3, 9.)  Inmates Earle and Moore
17 did not stop fighting until after the second shot was fired.  (Turner Decl. ¶¶ 3-5.)  Inmate
18 Kirkland reignited the fight with inmate Moore which did not stop until after the fourth shot was
19 fired.  (Turner Decl. ¶ 5.)  Turner claimed he initially aimed his launcher at inmate Earle and
20 then at inmate Kirkland, and never aimed the launcher or shot at Plaintiff.  (Turner Decl. ¶¶ 3-5.)

21       However, Plaintiff submits that he was shot in the head with a 40 MM launcher after the
22 inmate fight ended and while Plaintiff was away from the involved inmates.  After inmates Earle
23 and Moore began fighting and ignored verbal orders to stop, Defendant Turner fired his 40 MM
24 launcher at inmates Earle and Moore.  After the first shot, inmates Earle and Moore stopped
25 fighting and got into a prone position.  Then, inmate Kirkland (inmate Earle's brother) began
26 arguing verbally (not physically) with inmate Moore.  As inmates Kirkland and Moore continued
27 to argue, approximately 30 to 40 feet away from Plaintiff, Defendant Turner fired a second and
28 third round from his 40 MM launcher in Plaintiff's direction.  When Defendant Turner fired the

1  third shot, Plaintiff was struck in the back of his head. As a result of the shooting, Plaintiff
2  suffered severe head trauma, including swelling and excruciating migraines.

3  Defendant argues that Plaintiff's declaration should be stricken from the record under the
4  "sham affidavit rule." "The general rule in the Ninth Circuit is that a party cannot create an issue
5  of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins.
6  Co., 952 F.2d 262, 266 (9th Cir. 1991). To disregard the affidavit, however, "the district court
7  must make a factual determination that the contradiction was actually a 'sham.' " Id. at 267. An
8  affidavit is a 'sham' only where the inconsistency between a party's deposition testimony and the
9  subsequent affidavit is "clear and unambiguous ...." Van Asdale v. Int'l Game Tech., 577 F.3d
10 989, 998-99 (9th Cir. 2009). This "sham declaration" rule prevents a party who has been
11 examined at length on a deposition from raising issues of facts by submitting
12 a declaration. Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (citation omitted). Before
13 the Court applies the "sham declaration" rule, it must make a factual determination that the
14 contradiction is a sham, and there must be a clear inconsistency with the deposition testimony
15 and subsequent affidavit. Id.

16 At his deposition, Plaintiff testified that as he was coming down the stairs, inmates Earle
17 and Moore were fighting and Defendant Turner began to shoot at them. (Plaintiff Dep. at 31.)
18 Plaintiff does not recall how he got shot, but he remembers one of the shots flying by him just
19 before he was shot. (Id. at 32.) While Plaintiff acknowledged that he did not see Defendant
20 Turner *aim* the gun at him, he testified that "[o]nce the first shot came close, it happened so fast,
21 I turned my body and then I was hit." (Id. at 34.) Plaintiff also testified that he was looking at
22 Defendant Turner when he was shot. (Id. at 72.)

23 In his declaration, Defendant Turner declares that after inmates Earle and Moore stopped
24 fighting, inmate Kirkland began to verbally argue with inmate Moore while standing
25 approximately 30 feet away from each other. (Declaration of Plaintiff (Plaintiff Decl.) ¶¶ 3-7.)
26 As inmates Kirkland and Moore argued, Plaintiff saw Defendant Turner point his 40 mm
27 launcher in Plaintiff's direction and fired a second shot. (Id. ¶ 8.) At that time, Plaintiff was
28 sitting approximately 30 feet away from inmate Moore and approximately 40 feet away from

inmate Kirkland.  (Id. ¶ 10.)  Plaintiff observed the second shot fly by face and he turned his head to avoid being shot in the face.  (Id. ¶ 11.)  Defendant immediately thereafter fired a third found which struck Plaintiff in the back of his head.  (Id. ¶ 12.)

The Court must exercise caution before applying the sham declaration rule.  Yeager v. Bowlin, 693 F.3d at 1080.  Plaintiff's declaration and deposition testimony are not so obviously inconsistent as to render the declaration a sham.  At his deposition, Plaintiff acknowledged that he was facing Turner when he was shot, and in his declaration Plaintiff stated that Turner pointed the gun in his direction and shot.  The factual circumstances as to when he pointed the gun or whether Plaintiff actually saw his point in his direction is a question of fact.  While Defendant may characterize Plaintiff's statements as inconsistent and may call his credibility into question, it is for a jury to decide which statements from Plaintiff should hold the most weight.  Indeed, the Court cannot make credibility determinations at the summary judgment stage.  Accordingly, the Court will not strike Plaintiff's declaration as a sham.

Based on the fact that Plaintiff observed the second shot fly past him and he was then struck by the third shot, it is reasonable to infer that Defendant Turner aimed in his direction. Whether Plaintiff specifically saw Turner aim in his direction is a question of fact that must be resolved by the jury.  If the jury believes Plaintiff's testimony that he was 30 to 40 feet away from the inmates causing the disturbance and there was no physical threat at the time of the third shot, they can find liability in Plaintiff's favor.

As Plaintiff and Turner are percipient witnesses to the event and they each describe a different account of what occurred, the outcome of the case will turn on a credibility determination as to whose version should be credited. If a jury credits Plaintiff's testimony, it could reasonably render a verdict in his favor on the claims asserted. Thus, viewing the facts in the light most favorable to Plaintiff, Defendant Turner fired his weapon after the physical fight was over and Plaintiff was away from the three other inmates. This is sufficient to raise a genuine issue of material fact as to whether there was a need for force and if the amount of force used was appropriate.  Since the timing of when Defendant Turner fired his weapon is

relevant to determine if his use of force was excessive, there is a genuine issue of material fact as to Defendant Turner's use of force and Defendant Turner's motion for summary judgment shall be denied.

### 2. Qualified Immunity

The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law;' " defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." Tuuamalemalo v. Greene, 946 F.3d 471, 477 (9th Cir. 2019). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson v. Callahan, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier, 533 U.S. at 194); Henry A. v. Willden,

678 F.3d 991, 1000 (9th Cir. 2012) (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson, 555 U.S. at 236 (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment. Estate of Ford v. Caden, 301 F.3d 1043, 1053 (9th Cir. 2002) (extending Saucier to Eighth Amendment claims). A determination that there is a triable issue of fact as to whether defendants were deliberately indifferent does not necessarily preclude a finding of qualified immunity. Id. For a qualified immunity analysis, the court need not determine whether the facts alleged show that defendants acted with deliberate indifference. See Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996). Rather, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful. Id. at 939. It is possible for a prison official to know all of the facts alleged by plaintiff and to understand that he cannot recklessly disregard a substantial risk of harm to a prisoner, and yet to mistakenly, though reasonably, perceive that the risk of harm is not too high; such an official is entitled to qualified immunity. Estate of Ford, 301 F.3d at 1049-50.

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. White v. Pauly, 137 S. Ct. 548, 552 (2017).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendant is not entitled to qualified immunity.  First of all, Plaintiff has clearly alleged the deprivation of an actual constitutional right, i.e., an Eighth Amendment right to be protected from the use of excessive force. See Hudson, 503 U.S. at 6-7.  Secondly, Defendant has failed to establish that his conduct was reasonable. Viewing the evidence in the light most favorable to Plaintiff, Defendant is alleged to have aimed in Plaintiff's direction after the fight was over, and because there is a factual dispute as to whether the fight between the inmates was still occurring at the time Defendant Turner fired the third shot that struck Plaintiff, it cannot be said, as a matter of law, that Defendant is entitled to qualified immunity.  See Robins v. Meecham, 60 F.3d 1436, 1441 (9th Cir. 1995) (qualified immunity denied based on allegations that officer intentionally fired bird shot at another inmate but shot ricocheted, struck and injured the plaintiff);[4] Sims v. Zavala, No. 16-cv06779-JST, 2018 WL 11016208, at *10 (N.D. Cal. Mar. 26, 2018) (denying qualified immunity because there was a question of material fact as to whether Plaintiff and other inmate had stopped fighting prior to deployment of force); Provencio v. Vazquez, No. 1:07-cv-00069-AWI-JLT, 2010 WL 2490937, at *5 n. 5 (E.D. Cal. June 16, 2010) ("[U]sing force after compliance has been achieved is constitutionally unsound.") (citing LaLonde, 204 F.3d at 961); see also Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) ("[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful.") (citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment be denied.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one**

---

[4] Contrary to Defendant's contention, the theory of transferred-specific intent was not relevant to the ultimate determination of whether the officer's was entitled to qualified immunity.  Robins, 60 F.3d at 1441.

11

**(21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 2, 2022**

UNITED STATES MAGISTRATE JUDGE